[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 379.]

GRAVA, APPELLANT, *v.* PARKMAN TOWNSHIP [BOARD OF ZONING APPEALS], APPELLEE.

[Cite as *Grava v. Parkman Twp.*, 1995-Ohio-331.]

*Civil procedure—Judgments—Valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction that was the subject matter of the previous action.*

A valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. (Paragraph two of the syllabus of *Norwood v. McDonald* [1943], 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, overruled; paragraph two of the syllabus of *Whitehead v. Gen. Tel. Co.* [1969], 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10, overruled to the extent inconsistent herewith; paragraph one of the syllabus of *Norwood, supra*, and paragraph one of the syllabus of *Whitehead*, *supra*, modified; 1 Restatement of the Law 2d, Judgments [1982], Sections 24-25, approved and adopted.)

(No. 94-1406—Submitted June 7, 1995—Decided August 30, 1995.)

CERTIFIED by the Court of Appeals for Geauga County, No. 93-G-1775.

———————————

{¶ 1} In August 1991, appellant, Alfred Grava, who owns 3.6 acres of industrially zoned land located in Parkman Township, Geauga County, Ohio, submitted an "application for a zoning certificate" to the Parkman Township Zoning Inspector. Grava wanted to construct a building on his property to improve his existing business. The zoning inspector denied the application on the basis of Section 404.4 of the Parkman Township Zoning Ordinance ("Section 404.4"), which requires that industrially zoned property contain a minimum of five acres.

**{¶ 2}** Grava, acting *pro se*, appealed to appellee, Parkman Township Board of Zoning Appeals ("board"), seeking a variance from Section 404.4. Following public hearings, the board denied Grava's request for a variance on December 3, 1991. Grava did not appeal the board's decision.

**{¶ 3}** On May 15, 1992, Grava submitted a second application for a zoning certificate to the zoning inspector, requesting permission to construct the same building that was the subject of his earlier application. In his second application, Grava asserted that he was entitled to construct the building pursuant to Section 906.0 of the Parkman Township Zoning Ordinance ("Section 906.0").[1] The zoning inspector denied the application for the same reason he denied Grava's first application.

**{¶ 4}** Subsequently, Grava filed with the board two notices of appeal. In one document, Grava asserted that the zoning inspector erred in refusing to grant a zoning certificate under Section 906.0. In the other document, Grava argued, in the alternative, that he should be granted a variance from the five-acre requirement set forth in Section 404.4. After a public hearing, the board denied both appeals. Reasoning that it had previously denied Grava's request to build the same building in the same location and that no other circumstances had changed, the board concluded that Grava's application for a zoning certificate pursuant to Section 906.0 was barred by the doctrine of *res judicata.*

**{¶ 5}** Upon Grava's appeal pursuant to R.C. 2506.01 *et seq.*, the Court of Common Pleas of Geauga County concluded that the board was bound by its prior

---

1. Section 906.0 provides:
   "Nonconforming Lot of Record
   "In any zoning district, a zoning certificate may be issued for a building, structure, or use on any lot of record prior to the effective date of this resolution or any amendments thereto that does not meet the minimum lot area or frontage requirement for the district in which it is located, provided that said lot is a minimum of 1.5 acres in area and has a minimum of 150 feet of frontage and all of the other zoning requirements for said district are met."

decision and affirmed the board's decision. Upon further appeal, the Geauga County Court of Appeals affirmed the judgment of the trial court. The court of appeals held that Grava was barred by the doctrine of *res judicata* from asserting an alternate ground for relief pursuant to Section 906.0 because that claim "'might have been litigated'" in his first appeal to the board concerning his 1991 application for a zoning certificate.

{¶ 6} Finding its judgment to be in conflict with the judgments of the Cuyahoga County Court of Appeals in *Jones v. Petruska* (1979), 13 O.O.3d 111, and *Positive Edn. Program v. Cleveland* (Sept. 3, 1987), Cuyahoga App. No. 53081, unreported, the court of appeals certified the record of the cause to this court for review and final determination.

———————————

*Walter, Haverfield, Buescher & Chockley* and *R. Todd Hunt*, for appellant.

*David P. Joyce*, Geauga County Prosecuting Attorney, and *Lorrie A. Sass,* Assistant Prosecuting Attorney, for appellee.

———————————

WRIGHT, J.

{¶ 7} The issue certified to this court is whether, "[a]bsent a showing of changed circumstances, the doctrine of *res judicata* is applicable to decisions of a board of zoning appeals denying a request for a variance, even when the subsequent action seeks a zoning certificate based on the property's alleged status as a prior legal nonconforming use as provided for in a zoning resolution." We answer this query in the affirmative.

{¶ 8} In *Set Products, Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 31 OBR 463, 510 N.E.2d 373, paragraph one of the syllabus, this court held that "[t]he doctrine of *res judicata* applies to the decisions of a township board of zoning appeals relating to the grant or denial of variances * * *." We explained that *res judicata*, whether claim preclusion or issue preclusion,

applies to administrative proceedings that are "'of a judicial nature and where the parties have had an ample opportunity to litigate the issues involved in the proceeding.'" *Id*. at 263, 31 OBR at 465, 510 N.E.2d at 376 (quoting *Superior's Brand v. Lindley* [1980], 62 Ohio St.2d 133, 16 O.O.3d 150, 403 N.E.2d 996, syllabus). See, also, *Consumers' Counsel v. Pub. Util. Comm.* (1985), 16 Ohio St.3d 9, 16 OBR 361, 475 N.E.2d 782.

{¶ 9} The doctrine of *res judicata* involves both claim preclusion (historically called estoppel by judgment in Ohio) and issue preclusion (traditionally known as collateral estoppel). See *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10; *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062; 46 American Jurisprudence 2d (1994) 780, Judgments, Section 516. This case involves claim preclusion only.

{¶ 10} With regard to the claim-preclusive effect of the doctrine of *res judicata*, this court, in previous years, has stated: "A final judgment or decree rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction * * * is a complete bar to any subsequent action on the same claim or cause of action between the parties or those in privity with them." *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph one of the syllabus; see, also, *Whitehead v. Gen. Tel. Co., supra,* paragraph one of the syllabus. We also have stated: "A judgment or decree in a former action does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter." *Norwood, supra*, paragraph two of the syllabus; see, also, *Whitehead, supra*, paragraph two of the syllabus. To determine whether a second action was barred by this rule of law, one of the primary considerations was the identity of the evidence necessary to sustain each action. See *Norwood, supra*, paragraph four of the syllabus.

{¶ 11} Relying primarily on *Whitehead*, *supra*, Grava asserts that the doctrine of *res judicata* does not bar the present action concerning his second

application for a zoning certificate because this action involves a distinctly different method of obtaining relief than the previous action involving his first application. He argues that the facts necessary to obtain relief under Section 906.0 are different from the facts necessary to obtain a variance.[2]

{¶ 12} In recent years, this court has not limited the application of the doctrine of *res judicata* to bar only those subsequent actions involving the same legal theory of recovery as a previous action. In *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 62, 558 N.E.2d 1178, 1180, we stated: "It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in a first lawsuit'" (emphasis *sic*) (quoting *Rogers v. Whitehall* [1986], 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388). We also declared that "[t]he doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Id*.

{¶ 13} Today, we expressly adhere to the modern application of the doctrine of *res judicata*, as stated in 1 Restatement of the Law 2d, Judgments (1982), Sections 24-25, and hold that a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. Therefore, we overrule the second paragraph of the syllabus in *Norwood, supra*, and overrule the second paragraph of the syllabus in *Whitehead, supra*, to the extent it is inconsistent with today's holding.

---

2. For example, in order to establish the right to an area variance, an owner must show that he has encountered "practical difficulties" in the use of his property. See *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692. On the other hand, in order for an owner to obtain nonconforming-use status, in accordance with Section 906.0, the owner must prove that (1) he had a "lot of record" prior to the effective date of the regulation or any of its restrictive amendments, (2) the property consists of at least 1.5 acres and has a minimum of one hundred feet of frontage, and (3) all other zoning requirements for the zoning district have been met.

**{¶ 14}** Section 24(1) of the Restatement of Judgments, *supra*, at 196, provides: "When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar * * *, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." See, also, 46 American Jurisprudence 2d, *supra*, at Sections 516 and 533. Comment *b* to Section 24 of the Restatement of Judgments, *supra*, at 198-199, defines a "transaction" as a "common nucleus of operative facts." Comment *c* to Section 24, at 200, plainly states: "That a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."

**{¶ 15}** Section 25 of the Restatement of Judgments, *supra*, at 209, further explains: "The rule of § 24 applies to extinguish a claim by the plaintiff against the defendant *even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action*." (Emphasis added.) See, also, 46 American Jurisprudence 2d, *supra*, at Sections 535 and 537. The rationale for such a rule is aptly stated in Comment *a* to Section 24 of the Restatement of Judgments, *supra*, at 196-197: "[I]n the days when civil procedure still bore the imprint of the forms of action and the division between law and equity, the courts were prone to associate claim with a single theory of recovery, so that, with respect to one transaction, a plaintiff might have as many claims as there were theories of the substantive law upon which he could seek relief against the defendant. Thus, defeated in an action based on one theory, the plaintiff might be able to maintain another action based on a different theory, even though both

actions were grounded upon the defendant's identical act or connected acts forming a single life-situation. * * * *The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories*, or variant forms of relief flowing from those theories, that may be available to the plaintiff * * *; regardless of the variations in the evidence needed to support the theories or rights." (Emphasis added.)

{¶ 16} We hold that Grava's second application for a zoning certificate is barred by the doctrine of *res judicata.* Grava's second application is based on a claim arising from a nucleus of facts that was the subject matter of his first application. In both instances, Grava was attempting to construct exactly the same building on the same tract of land, which had fewer acres than Section 404.4 of the local zoning ordinance required. In fact, the only difference between the two applications is the theory of substantive law under which Grava sought relief.

{¶ 17} Grava argues that barring the present action would be unfair. However, he had a full and fair opportunity to present his case and obtain a zoning certificate during the proceedings involving his first application and did not appeal the zoning board's denial of his request. Grava simply failed to avail himself of all available grounds for relief in the first proceeding. Absent changed circumstances, refusing to allow Grava to use an alternate legal theory overlooked in the previous proceedings does not work an injustice. Instead, by providing parties with an incentive to resolve conclusively an entire controversy involving the same core of facts, such refusal establishes certainty in legal relations and individual rights, accords stability to judgments, and promotes the efficient use of limited judicial or quasi-judicial time and resources. The instability that would follow the establishment of a precedent for disregarding the doctrine of *res judicata* for "equitable" reasons would be greater than the benefit that might result from relieving some cases of individual hardship.

**{¶ 18}** For the foregoing reasons, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., WRIGHT, F.E. SWEENEY and COOK, JJ., concur.

DOUGLAS, RESNICK and PFEIFER, JJ., dissent.

_____

**DOUGLAS, J., dissenting.**

**{¶ 19}** I respectfully dissent.[3]  The majority has established a dangerous precedent in Ohio regarding property owners.  The majority has concluded, improperly, that appellant's prior unsuccessful attempt to obtain a variance in 1991 acted as a bar, on *res judicata* grounds, to his  seeking relief in 1992 under Section 906.0 of the Parkman Township Zoning Ordinance.

**{¶ 20}** The doctrine of *res judicata* involves both estoppel by judgment and collateral judgment.  See *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 107, 538 N.E.2d 1058, 1062, citing *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10.  In *Whitehead*, at paragraph two of the syllabus, we held that: "*A final judgment or decree in an action does not bar a subsequent action where the causes of action are not the same, even though each action relates to the same subject matter.  However, a point of law or a fact which was actually and directly in issue in the former action, and was there passed upon and determined * * * may not be drawn in question in a subsequent action between the same parties or their privies*.  The prior judgment estops a party, or a person in privity with him, from subsequently relitigating the identical issue raised in the prior action.  * * *" (Emphasis added.)

---

3. Note:  This dissent was written, submitted and voted on before the majority opinion was changed to overrule, in part, and modify, in part, *Norwood v. McDonald* (1943), 142 Ohio St.299, 27 O.O.240, 52 N.E.2d 67 and *Whitehead v. General Tel. Co.* (1969), 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10.

**{¶ 21}** Appellant's 1991 request for an area variance from Section 404.0 of the Parkman Township Zoning Ordinance was markedly different from his 1992 request for relief pursuant to Section 906.0. In order to establish the right to an area variance, it must be shown that the property owner has encountered "practical difficulties" in the use of his or her property. See *Duncan v. Middlefield* (1986), 23 Ohio St.3d 83, 23 OBR 212, 491 N.E.2d 692. On the other hand, nonconforming-use status, in accordance with Section 906.0, requires proof that (1) the property owner had a "lot of record" prior to the effective date of the regulation or any restrictive amendments thereto, (2) the property in question is a minimum of one and one-half acres and has a minimum of one hundred fifty feet of frontage, and (3) all other zoning requirements for the zoning district have been met. Moreover, a variance, if granted, "runs with the land and, as a judgment *in rem*, cannot be collaterally attacked." *Set Products*, *Inc. v. Bainbridge Twp. Bd. of Zoning Appeals* (1987), 31 Ohio St.3d 260, 263, 31 OBR 463, 465, 510 N.E.2d 373, 376. However, prior nonconforming-use status may be extinguished if the use is discontinued, voluntarily, for a certain period of time. See R.C. 519.19.

**{¶ 22}** Clearly, appellant's initial request in 1991 for a variance and his request in 1992 for relief pursuant to Section 906.0 constitute separate "causes of action," even though they relate to the same subject matter, *i.e.*, constructing a building on land that does not comply currently with the minimum acreage requirement. As is evident from the different requirements involved, proof of either of these claims for relief "does not necessarily establish the other." See *Krahn*, *supra*, 43 Ohio St.3d at 107, 538 N.E.2d at 1062. See, also, *Norwood v. McDonald* (1943), 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67, paragraph four of the syllabus; and *Jones v. Petruska* (App. 1979), 13 O.O.3d 111, 113 ("[A] variance application and asserting prior non-conforming use status constitute separate causes of action, even though * * * they relate to the same subject matter. Both are

distinctly separate methods of obtaining relief from a zoning restriction and require different sets of facts to sustain.").

{¶ 23} Further, the determination by the board in 1991 that appellant was not entitled to a variance did not determine the matter upon which appellant's 1992 application was grounded. Indeed, the issues presented with respect to appellant's 906.0 claim were not "actually and necessarily litigated and determined" in the denial of appellant's 1991 request for a variance. See *Whitehead*, *supra*, 20 Ohio St.2d at 112, 49 O.O.2d at 437, 254 N.E.2d at 13.

{¶ 24} In reaching the conclusion that appellant's Section 906.0 request for relief was barred by the doctrine of *res judicata*, the majority relies on *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60, 558 N.E.2d 1178, and 1 Restatement of the Law 2d, Judgments (1982), Sections 24-25. However, the majority's reliance on *National Amusements* and Sections 24-25 of the Restatement of Judgments, *supra*, is misplaced and just plain wrong.

{¶ 25} In *National Amusements*, 53 Ohio St.3d at 62, 558 N.E.2d at 1180, we stated that: "It has long been the law of Ohio that 'an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were *or might have been* litigated in the first lawsuit.'" (Emphasis *sic*.) *Id.,* quoting *Rogers v. Whitehall* (1986), 25 Ohio St.3d 67, 69, 25 OBR 89, 90, 494 N.E.2d 1387, 1388. *National Amusements* involved a plaintiff's repeated attempt to have a city tax declared unconstitutional. However, the facts and claims in the case at bar involve a unique area of the law and cannot be equated with the situation in *National Amusements*. In any event, it is apparent that under the circumstances of this particular case, appellant's 906.0 claim *would not have been considered* in appellant's 1991 appeal to the board. It is not disputed that the zoning inspector, with respect to appellant's 1991 application, informed appellant that the remedy available was to seek a variance. Appellant relied on this advice and, after the zoning inspector denied appellant's application, appellant, acting *pro se*, appealed

to the board seeking a variance from the five-acre requirement set forth in Section 404.4.

**{¶ 26}** I am also mystified by the majority's citation to Sections 24-25 of the Restatement of Judgments, *supra.* The majority states that "[t]oday, we expressly adhere to the modern application of the doctrine of *res judicata*, as stated in 1 Restatement of the Law 2d, Judgments (1982), Sections 24-25, and hold that *a final judgment rendered upon the merits* bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." (Emphasis added.) Sections 24-25 of the Restatement of Judgments, *supra,* do not concern decisions of a township zoning board but, rather, involve a court of record.

**{¶ 27}** Probably the most disturbing aspect of the majority's holding is that the majority is aware of, but consciously ignores, the fact that appellant falls clearly within the requirements of Section 906.0. As a matter of fact, during oral argument before this court, counsel for the board candidly admitted that appellant, absent the technical application of *res judicata*, would be entitled to relief under Section 906.0. In this regard, I am persuaded by one legal authority which states:

"The doctrine of res judicata is not a mere matter of practice or procedure inherited from a more technical time, but rather a rule of fundamental and substantial justice, or public policy and of private peace. The doctrine may be said to adhere in legal systems as a rule of justice. Hence, the position has been taken that the doctrine of res judicata is to be applied in particular situations as fairness and justice require, *and that it is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice*.

"* * *

"Underlying all discussion of the problem must be the principle of fundamental fairness in the due process sense. The public policy underlying the principle of res judicata must be considered together with the policy that a party

shall not be deprived of a fair adversary proceeding in which to present his case.  *
* *" (Emphasis added and footnotes omitted.)  46 American Jurisprudence 2d
(1994) 786-787, Judgments, Section 522.  See, also, *Goodson v. McDonough
Power Equip., Inc*. (1983), 2 Ohio St.3d 193, 202, 2 OBR 732, 740-741, 443 N.E.2d
978, 986-987.

{¶ 28} As a final matter, I would also add that the majority is wrong in
concluding that the application of *res judicata* to the case at bar puts the matter to
rest and "establishes certainty in legal relations * * * and promotes the efficient use
of limited judicial or quasi-judicial time and resources."  In fact, today's holding
will surely consume further "judicial or quasi-judicial time and resources."
Appellant may seek a variance from Section 404.4 based upon a showing of
changed circumstances.  See *Set Products*, *supra*, paragraph two of the syllabus.
Further, the majority's holding does not preclude appellant from resubmitting an
application for a zoning certificate under Section 906.0.  In resubmitting his
application based upon nonconforming-use status, appellant need only change,
minimally, the dimensions and site of the building in question.  Or, in the
alternative, appellant could seek a writ of mandamus to compel the board to grant
him the relief he originally sought.  See, generally, 2 Restatement of Law 2d,
Judgments (1982), Section 83(3).

{¶ 29} For the foregoing reasons, I respectfully dissent.

RESNICK and PFEIFER, JJ., concur in the foregoing dissenting opinion.

————————————